

FEB 19 2003

CLERK U S DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

CV 02-01232 #00000052

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOEL HODGELL, an individual,

    Plaintiff,

v

RICHARD GOLDRING, GO ENTERTAINMENT INC., INTERNET ADVISORY CORPORATION (IACP), SCORES USA INC., GO WEST ENTERTAINMENT INC , 3W CORPORATION, DATAPEER INC , & "JOHN DOE" SPAMMERS,

    Defendants

No. C02-1232Z

ORDER

    This matter comes before the Court on Defendant IACP's motion to dismiss for lack of personal jurisdiction per Rule 12(b)(2) and for summary judgment per Rule 56, docket no 27. This matter also comes before the Court on Defendant DataPeer's motion to dismiss for lack of personal jurisdiction per Rule 12(b)(2) and for summary judgment per Rule 56, docket no  36

**I. BACKGROUND**

    Defendant DataPeer, Inc , formerly known as 3W Corporation, is a Delaware Corporation with its sole offices in Fort Lee, New Jersey. See McGilloway decl., docket no 38 at 1-2  McGilloway is the Director of Government Markets for DataPeer. Id at 1 DataPeer's sole business is the operation of a datacenter in a leased building located in Fort

ORDER  -1-

Lee, New Jersey. A "datacenter" is a specialized facility that houses computer servers[1] that host web sites. Id. at 2. DataPeer had a business relationship with only one of the defendants in this action, Go Entertainment. Id. at 4. On November 20, 2001, DataPeer and Go Entertainment entered into a Master Service Agreement under which DataPeer provided Go Entertainment "co-location services."[2] Id. at 4. DataPeer also sold Go Entertainment the bandwidth necessary to access the Internet. Id. at 4. DataPeer did not own the servers or have any role in, or control over, the content of any information posted on any servers or their websites, and specifically did not have any role in the content of the email transmitted by Go Entertainment. Id. at 4. Further, DataPeer had no means to monitor the content of email communications and does not know what, if any, of Go Entertainment's email was sent through DataPeer's datacenter–much less whether any of the email recipients were Washington State residents. Id. at 4. DataPeer terminated its relationship with, and stopped providing services for, Go Entertainment as of October 1, 2002. Id. at 6. McGilloway testifies in his declaration that DataPeer never composed or sent unsolicited or illegal commercial email, and that it never has assisted anyone else in doing so. Id. at 6. DataPeer never knowingly facilitated Go Entertainment's transmission of the alleged spam email, and the only email DataPeer ever sent to Plaintiff Hodgell was to follow up on his complaint that others had sent him spam email. Id. at 5-6.

Defendant Internet Advisory Corporation (IACP), now known as Scores Holding Company (Scores), is a Utah Corporation with its sole offices in New York City. See Goldring decl., docket no. 41, p. 1. Richard Goldring is the President of Scores. Id.

---

[1] In general, a "server" is a computer program that provides services to other computer programs in the same or other computers. In addition, the computer that a server program runs in is also frequently referred to as a "server." An "email server" is a computer, connected to the Internet, that serves as a central post office for sending and storing email for its account holders.

[2] Specifically, "co-location services" refers to the fact that DataPeer housed servers owned by Go Entertainment, who paid DataPeer for the right to house Go Entertainment servers in DataPeer's datacenter.

ORDER -2-

Between 1998 and November of 2000, IACP's sole business was the operation of a datacenter in a building IACP leased in Florida, and IACP's sole offices at the time were in Fort Lauderdale, Florida. Id. at 2. IACP owned some of the computer servers located in its datacenter, and for a flat monthly fee IACP provided third parties with space on its computer servers to maintain their web sites, a domain name, IP addresses, email accounts, web design expertise, bandwidth and technical support. Id. at 2. IACP had no role in developing or reviewing the content of any information posted on its customers' web sites transmitted by its customers through IACP's servers. Id. at 2. IACP's datacenter also offered "co-location services," housing servers owned by third parties who paid IACP for the right to place their servers in the datacenter. Id. at 2. In addition, IACP sold bandwidth necessary to access the internet and provided web site programming services for hourly rates. Id. at 2. As a datacenter and Internet service provider, IACP was assigned 16 C blocks of IP addresses, with each C block consisting of 256 IP addresses. The IP addresses belonging to IACP are 216.129.160.0 through 216.129.175.255. Id. at 3.

IACP filed for bankruptcy under Chapter 11 on May 25, 2001. Id. at 3. In early 2002, IACP began to transform itself from an Internet company into a nightclub operator and moved its offices to New York City. In March of 2002, IACP acquired the rights to operate nightclubs in New York City under the Scores brand. In May of 2002, IACP changed its name to Scores Holding Company (Scores), and contends that it is no longer in the computer business. Id. at 3. As it no longer owned or operated the datacenter, IACP was not using most of its 16 C blocks of Internet Protocol Numbers[3] (IP Numbers). IACP granted permission to defendant Go Entertainment to use them as the numerical identifiers for Go

---

[3] An Internet Protocol Number (IP Number) is a numeric address for a particular machine or a web site hosted on that machine. IP numbers are often assigned in large blocks. Each C block of IP numbers consists of 256 IP numbers. In the case of a web server, the IP number or block of numbers is initially assigned to the owner of the server. The owner then assigns them to web site operators as the numerical identity for their web site hosted on the owner's server. When the web sites shut down, the IP numbers become available to be assigned to some other web site.

ORDER -3-

Entertainment's servers hosting Go's web sites. Id. at 4. The email received by Plaintiff had a link to these web sites and corresponding IP numbers in the body of the email message. Id. at 4. IACP contends that this is IACP's only connection to this lawsuit, and that the fact that IACP's IP numbers appear in the body of the email does not mean that IACP played any role in composing or transmitting the email. Id. at 4. Further, IACP claims that it never composed or sent unsolicited commercial email, and that it never assisted or conspired with anyone else to do this. Id. at 4. Lastly, Scores (formerly known as IACP) claims that it never has owned any interest in Go Entertainment, and that it never provided virtual hosting or co-location services to Go Entertainment.

Defendant Go Entertainment is a New York Corporation with its sole offices in New York City. See Nicholson decl., docket no. 42 at 3. Nicholson is the Chief Technical Officer for Go Entertainment. Id. at 1. Go Entertainment formed in June 2001, and its sole business is the operation of adult web sites. Id. at 3. All of Go Entertainment's computer servers and equipment used to host websites are located in New York and Washington D.C. Id. at 3-4. Between November of 2001 and October of 2002, Go Entertainment's web sites were hosted on computer servers owned by Go Entertainment but located at DataPeer's datacenter in New Jersey. Go Entertainment's servers have since been relocated. Id. at 4-5. Unlike defendants DataPeer and IACP, defendant Go Entertainment has not moved to dismiss for lack of personal jurisdiction. However, Go Entertainment also denies "any role in composing, drafting, formulating, sending, originating, initiating, or transmitting any commercial electronic mail messages to Joel Hodgell." Id. at 5. Defendant Go Entertainment contends that the fact that there was a link to a Go Entertainment website in the body of the spam sent to plaintiff does not prove that the email originated from Go Entertainment, or that Go Entertainment transmitted the email. Id.

Plaintiff, Joel Hodgell, is a resident of the State of Washington. Plaintiff claims that since at least December 2, 2001, defendants IACP, DataPeer, and Go Entertainment have

ORDER -4-

sent, assisted and conspired with others to send unsolicited commercial electronic mail via the Internet to the plaintiff and other residents of Washington state. See Ex. B. to Praecipe, docket no. 9, (Complaint For Injunctive and Additional Relief Under the Unfair Business Practices–Consumer Protection Act and the Commercial Electronic Mail Act, at 3)  As of January 6, 2003, plaintiff claims to have received 261 unsolicited email transmissions in violation of RCW 19.190 and RCW 19.86, 47 of which he claims were sent since this suit was filed and the defendants were reasonably aware of Plaintiff's email addresses. See Hodgell Decl., docket no. 46, at 3; see also Hodgell Decl., docket no. 24, at 7.

Plaintiff claims that on numerous occasions, he contacted defendants IACP and DataPeer "to notify them about the ongoing spamming apparently being done by them and/or for their customer(s)." See Hodgell Decl., docket no. 46, at 6-7, see also Hodgell Decl., docket no. 24, at 2. He states that he sent email to IACP and DataPeer requesting that they stop the spamming on December 19, 2001, and January 2, 2002, and again to IACP on January 17, 2002. See Hodgell Decl., docket no. 24, at 2. He also claims to have spoken to DataPeer's technical support department (James Li) on January 24, 2002, and emailed DataPeer's manager of production services (Patrick McGilloway). Id. at 2-3.  He further claims that James Li informed him that the IP numbers belonged to Go Entertainment, and that Go Entertainment is a subsidiary of IACP. Id. at 2.  However, Richard Goldring (President of Scores Holding Company, formerly known as IACP) states that "Scores Holding Company, f/k/a IACP does not own, and never has owned, any interest in Go Entertainment. IACP never provided virtual hosting or co-location services to Go Entertainment." See Goldring Decl., docket no. 41, at 4.  Plaintiff fails to produce evidence that IACP owns (or ever owned) any interest in Go Entertainment.

When DataPeer asked plaintiff to provide additional information about the email, including "header" information which would allow them to identify the sender and investigate the complaint, plaintiff refused to provide the information. See McGilloway

ORDER -5-

1  decl, docket no 38, at 6. DataPeer argues that this information is necessary to verify or
2  refute that an alleged action occurred, and to establish a basis for taking action against a
3  DataPeer customer Id. DataPeer further argues that without such information about the
4  source of the email with transmission headers intact, they are put in the untenable position of
5  having to choose between possibly breaching service contracts or being sued under anti-spam
6  laws. Id.; see also DataPeer's Motion to Dismiss and for Summary Judgment, docket no 36,
7  at 7 Plaintiff contends that he removed his email address from the copies of the spams he
8  sent to the defendants to protect his identity, and that this did not change the responsibility of
9  defendants to stop assisting spammers by hosting their websites See Hodgell Decl, docket
10 no. 24, at 3. Plaintiff states that it was unnecessary and unreasonable to expect him to
11 provide the complete spams with the full transmission headers intact Id.

## II. DISCUSSION

Defendants DataPeer and IACP make similar motions pursuant to Rule 12(b)(2), addressing their nearly identical facts, arguments, and law Therefore, these are discussed together

### A. Jurisdiction

Two defendants (IACP and DataPeer) now move to dismiss for lack of personal jurisdiction. There are two recognized bases for personal jurisdiction over nonresident defendants (1) "general jurisdiction" which arises when a defendant's contacts with the forum state are so pervasive as to justify the exercise of jurisdiction over the person in all matters, and (2) "specific jurisdiction" which arises out of the defendant's contacts with the forum giving rise to the subject litigation. Indiana Plumbing Supply, Inc. v. Standard of Lynn, Inc., 880 F Supp 743, 95 Daily Journal D A.R 10 (C.D.Cal. 1995) (citing Helicopteros Nacionales de Colombia, S A v Hall, 466 U.S 408, 414 (1984))

When a motion to dismiss for lack of personal jurisdiction is made as a defendant's initial response to a complaint, Fed. R. Civ P 12(b)(2) controls and states that the court may

ORDER -6-

consider evidence presented in affidavits to assist it in its determination and may also order discovery on the jurisdictional issues. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001). However, when a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss. Id; Data Disc, Inc. v. Sys. Technology Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). In this context, a "prima facie" showing means that plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. See WNS, Inc. v. Farrow, 884 F.2d 200, 203-204 (5th Cir. 1989). Unless directly controverted, the plaintiff's version of the facts is taken as true. Doe, 248 F.3d at 922. Conflicts in the evidence set forth in the parties' affidavits must be resolved in the plaintiff's favor. Id.

**B.   General Jurisdiction**

General personal jurisdiction exists when a nonresident defendant conducts substantial and continuous business in the state of Washington. CTVC of Haw. Co., Ltd. v. Shinawatra, 82 Wn. App. 699, 709, 919 P.2d 1243 (1996). The parties agree that defendants have not had sufficient contacts with Washington to subject them to general jurisdiction. See Defendant DataPeer's Motion to Dismiss, docket no. 36, at 10-11; Defendant IACP's Motion to Dismiss, docket no. 27, at 12-13; Plaintiff's Opposition to Defendants' Motions, docket no. 45, at 6. Accordingly, only specific jurisdiction is currently at issue.

**C.   Specific Jurisdiction**

Sitting in diversity, this Court may exercise specific jurisdiction over a nonresident defendant only if jurisdiction is proper under Washington's long-arm statute and comports with federal constitutional due process principles. See Fireman's Fund Ins. Co. v. Nat. Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996); Core-Vent Corp. v. Nobel Indus. AB, 11 F.3d 1482, 1484 (9th Cir. 1993). Washington's long-arm statute, RCW 4.28.185, is co-extensive with the outer limits of due process and as such prescribes that personal jurisdiction can only

ORDER -7-

be asserted over a non-resident defendant if the defendant has "minimum contacts" with the forum state such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Washington, 326 U.S. 310, 316 (1945).

A singular three-part test governs whether this Court has specific personal jurisdiction over nonresident defendants. Plaintiffs must demonstrate that (1) purposeful minimum contacts exist between the defendants and the state of Washington; (2) plaintiffs' injuries relate to or arise from those minimum contacts, and (3) the exercise of jurisdiction is reasonable and consistent with traditional notions of fair play and substantial justice. Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995); Grange Ins. Ass'n v. State, 110 Wn.2d 752, 758, 757 P.2d 933 (1988). All three prongs of the test must be satisfied before specific jurisdiction may be exercised. Id.

### 1.  **Purposeful Direction or Availment - The "Effects" Test**

The purposeful direction or availment requirement for specific jurisdiction is analyzed in intentional tort cases under the "effects" test derived from Calder v. Jones, 465 U.S. 783 (1984). Calder stands for the proposition that purposeful availment is satisfied even by a defendant whose only contact with the foreign state is the 'purposeful direction' of a foreign act having an effect in the forum state. Dole Food Co., Inc. v. Watts, 303 F.3d 1104 (9th Cir. 2002) (citing Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986)). Based on Calder, the effects test requires that the defendant allegedly 1) committed an intentional act, 2) expressly aimed at the forum state, 3) which caused a harm that the defendant knew would likely be suffered by an entity in the forum state. Id.

The defendants argue that an Internet Service Provider (ISP) that merely contributes technology, equipment, servers, and IP numbers for its customers does not purposefully avail itself of doing business in the forum state, and rely on ALS Scan v. Digital Service 293 F.3d 707, 714 (4th 2002). In ALS Scan, Digital Service (the

ORDER -8-

defendant) asserted that it was an ISP which provided bandwidth service to its customer, but that it was not affiliated in any way with the customer except through an arms-length customer relationship. Id. at 709. ALS Scan adopted the "sliding scale" articulated in Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119 (W.D.Pa 1997) for defining when electronic contacts with a State are sufficient for personal jurisdiction. ALS Scan, 293 F.3d at 713. In Zippo, the court found that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportional to the nature and quality of commercial activity that an entity conducts over the Internet." Zippo, 952 F.Supp. at 1124.

ALS Scan described the Zippo "sliding scale" as involving two ends of a spectrum. ALS Scan, 293 F.3d at 713. At one end of the spectrum, personal jurisdiction is proper where a defendant clearly does business over the Internet, enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet. Id. At the opposite end, personal jurisdiction is not proper where a defendant simply posts information on a passive Internet Web site which is merely accessible in foreign jurisdiction. Id. The ALS Scan Court adopted and adapted the Zippo sliding scale, concluding that even though the electronic signals from the defendant's facility were received in the state, and even though the defendant provided bandwidth, "its role as an ISP was at most passive. Surely it cannot be said that Digital 'purposefully availed' itself of the privilege of conducting business or other transactions in Maryland." Id. at 714. Similarly, the defendants IACP and DataPeer merely played a passive role by providing IP numbers, bandwidth and co-location services to a customer (Go Entertainment).

ALS Scan adapted the Zippo model to conclude that personal jurisdiction exists over a person " when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts." Id. at 714. The ALS Scan court held that an ISP that merely provided

ORDER -9-

bandwidth to a third party and enabled that third party to create a website and send information over the Internet did not direct its electronic activity into a forum state, and did not manifest an intent to engage in a business or some other interaction in the forum state Id. The factual issue of whether the ISP's conduct in enabling a third party created a cause of action in the forum state was not reached, given that the ISP's conduct did not satisfy the first two prongs of the test for personal jurisdiction. In this case, the conduct of defendants IACP and DataPeer does not satisfy the first two prongs of the ALS Scan test for personal jurisdiction, and this court does not need to resolve whether a cause of action exists under Washington law.

In Cybersell, Inc. v. Cybersell, Inc., 130 F.3d 414, 416 (9th Cir. 1997), the Ninth Circuit held that, in order for a website to give rise to personal jurisdiction, the website must have some presence in that jurisdiction and that it is not sufficient that it merely operates a "passive" website. The Cybersell court notes that determination of whether there are sufficient contacts to warrant personal jurisdiction depends on the level of interactivity and commercial nature of the exchange of information that occurs on a Web site. Id. at 418, citing Zippo Manufacturing Co. v. Zippo Dot Com, Inc., 952 F.Supp. 1119, 1124 (W.D Pa. 1997). In Cybersell, the court held that registering a domain name identical to a trademark and posting a web site via such domain name on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another. See Cybersell, 130 F.3d at 418. There must be "something more" to demonstrate that the defendant purposefully directed his activity in a substantial way toward the forum state. See id.

In this case, multiple defendants are being charged with sending, assisting, or conspiring to send 261 misleading and/or deceptive unsolicited commercial spam messages to a Washington resident. Although the actual spammer may have purposefully directed his activity toward the forum state, the plaintiff failed to produce any evidence that defendant IACP did more than provide IP numbers to Go Entertainment, a passive action that is not

ORDER -10-

sufficient to establish personal jurisdiction over IACP. Similarly, the plaintiff failed to produce any evidence that defendant DataPeer did more than provide bandwidth and co-location services to Go Entertainment, a passive action that is not sufficient to establish personal jurisdiction over DataPeer. Neither IACP nor DataPeer did "something more" to demonstrate that the defendant purposefully directed its activity in a substantial way toward the forum state.

Plaintiff relies on Verizon Online Services, Inc v. Ralsky, 203 F Supp 2d 601 (E D VA 2002), for support. There, a Michigan spammer moved to dismiss an action in Virginia based on personal jurisdiction grounds and in the alternative to transfer venue to Michigan The court held that millions of spam sent to Verizon's subscribers through Verizon's email servers constituted sufficient minimum contacts to satisfy constitutional requirements Verizon, 203 F Supp 2d at 604

Plaintiff's reliance on Verizon is misplaced Verizon had seven email servers located in Virginia and alleged that the defendants sent millions of spam messages through plaintiff's computer network over a period of several weeks See id at 607, 617. In determining whether the assertion of jurisdiction over defendants was proper, the court focused on the number of email sent and the resulting harm to plaintiffs, reasoning that defendants "entered" Virginia when the spam "overloaded Verizon's servers." See id at 618. There are other similar federal cases in which plaintiff owners of internet service providers (ISPs) have successfully sued after suffering damages when defendants sent high volumes of spam via plaintiff's servers causing significant damage to plaintiff's business (See e.g., America Online, Inc. v. LCGM, Inc, 46 F. Supp 2d 444 (E.D VA 1998) However, there are no federal cases cited in which an ISP is held responsible for the spamming conduct of its customers.[4]

---

[4] Plaintiff relies on State v Heckel, 143 Wn 2d 824 (2001). In Heckel, the court held that RCW 19.190 doesn't violate the dormant Commerce Clause. Id. at 840 However, Heckel provides plaintiff with no support under the facts of this case, where plaintiff offers no evidence

ORDER -11-

### 2. Claims Arising out of Defendants' Activities

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff's claim arises out of a defendant's forum related activities. <u>Doe v American Nat Red Cross</u>, 112 F 3d 1048, 1051 (9th Cir. 1997). The "arising out of" requirement of the specific jurisdiction test is met if "but for" the contacts between the defendant and the forum state, the cause of action would not have arisen. See <u>Terracom v Valley Nat Bank</u>, 49 F.3d 555, 560 (9th Cir. 1995).

Here, IACP's IP numbers were used by Go Entertainment to send emails. DataPeer sold defendant Go Entertainment the bandwidth necessary to access the Internet, and provided co-location services to Go Entertainment. However, DataPeer did not own the servers or have any role in or control over the content of any information posted on any server or website. Plaintiff does not establish that 'but for' these defendant's efforts, he would not have been harmed. Plaintiff cannot meet the 'but for' test in regard to IACP and DataPeer.

## III. CONCLUSION

For the reasons stated, the court GRANTS the motions of defendants IACP and DataPeer to dismiss for lack of personal jurisdiction, docket numbers 27 and 36. The court strikes as moot these defendants' motions for summary judgment.

IT IS SO ORDERED.

DATED this 18th day of February, 2003

THOMAS S. ZILLY
UNITED STATES DISTRICT JUDGE

---

that the defendants IACP and DataPeer were the spammers

ORDER -12-