CC TO JUDGE ___ 9?

THE HONORABLE THOMAS S. ZILLY

02-CV-01232-M

_____ FILED   _____ ENTERED
_____ LODGED _____ RECEIVED

OCT 06 2003  KN
AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| JOEL HODGELL, | Case No.: C02-1232Z |
| Plaintiff, | |
| vs. | |
| GO ENTERTAINMENT, INC. & "JOHN DOE" SPAMMERS, | PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| Defendants. | NOTE ON MOTION CALENDAR: OCTOBER 31, 2003 |

## I.   RELIEF REQUESTED

Plaintiff, Joel Hodgell ("Hodgell"), hereby respectfully requests that the Court grant

Plaintiff's Motion for Summary Judgment pursuant to the Federal Rule of Civil Procedure

56, decreeing that Defendant has engaged in conduct constituting violations of the

Commercial Electronic Mail Act ("CEMA"), Chapter 19.190 Revised Code of Washington

("RCW"); the Consumer Protection Act, Chapter 19.86 RCW ("CPA"); the common law tort

of trespass to chattels; and RCW 9.68, the Washington Obscenity and Pornography Act.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -1

ORIGINAL

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA 98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

## II.   FACTS

This matter arises from an action filed in the King County Superior Court pursuant to RCW 19.190, the Washington Commercial Electronic Mail Act, RCW 19.86, the Washington Consumer Protection Act, the common law tort of trespass to chattels, and RCW 9.68, the Washington Obscenity and Pornography Act.  Defendants have sent at least 358 commercial emails (CEM) to Plaintiff, which Plaintiff alleged violate the Washington statute.

Various motions to dismiss were filed by Defendants. Only Go Entertainment, Inc. and various "John Doe" spammers remain as defendants.  Plaintiff alleged, and Go Entertainment admitted, that these "John Doe" defendants were acting on behalf of Go Entertainment, Inc., and Plaintiff argues that Go Entertainment "assisted" in the transmission of email or "conspired with" the agents to transmit the email, as defined in the CEMA.

Counsel for Defendant notified the undersigned that their firm was withdrawing its representation of Go Entertainment.   A "Stipulation For Withdrawal Of Jameson Babbitt Stites & Lombard, P.L.L.C. As Counsel Of Record For Go Entertainment" was submitted, and this Court allowed the withdrawal of Jameson, Babbitt Stites & Lombard PLLC, on May 29, 2003.

Prior to withdrawal, counsel for Defendant stated that there would be no further defense on this action by Go Entertainment, Inc.

No attorney has appeared on behalf of Defendants since the withdrawal of Defendant's former counsel.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -2

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

### III.   ISSUES

May summary judgment be granted in favor of Hodgell where Go Entertainment,

Inc. sent commercial electronic mail messages with misleading subject lines,

misrepresented the origin and transmission path of the messages, and used third party

domain names without permission in violation of the Commercial Electronic Mail Act,

Chapter 19.190 RCW; the Consumer Protection Act, Chapter 19.86 RCW; trespassed

upon Plaintiff's chattels; and violated the Obscenity and Pornography Act?

### IV.   EVIDENCE RELIED UPON

Plaintiffs rely on the pleadings and Court file in this case, the attached exhibits,

and the Declarations of Joel Hodgell and Dietrich Biemiller.

### V.   ARGUMENT AND AUTHORITY

#### A.   Background

The Washington Commercial Electronic Mail Act ("CEM A") provides:

(1) No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that:

(a) Uses a third party's internet domain name without permission of the third party, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message; or

(b) Contains false or misleading information in the subject line.

(2) For purposes of this section, a person knows that the intended recipient of a commercial electronic mail message is a Washington resident if that information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address.

RCW 19.190.020. See State v. Heckel, 143 Wn.2d 824, 828 (2001).

A violation of the CEM Act is a *per se* violation of the Consumer Protection Act.

RCW 19.190.030.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -3

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

"'Commercial electronic mail message' means an electronic mail message sent for the purpose of promoting real property, goods, or services for sale or lease." RCW 19.190.010(2); Heckel, 143 Wn.2d at 826, f.n. 1.

Each e-mail message is a computer data file and contains so-called "header" information in the "To," the "From," and the "Received" fields in the message. Heckel, 143 Wn.2d at 828, f.n. 4. "The subject line, similar to the 'RE' line of a letter or memorandum, is generally displayed (at least in part) alongside the sender's name in the recipient's e-mail inbox." Id. at 827, f.n. 3.

When an e-mail message is transmitted from one e-mail address to another, the message generally passes through at least four computers. Heckel, 143 Wn.2d at 828, f.n. 4. From the sender's computer, the message travels to the mail server computer of the *sender's* Internet Service Provider (ISP). Id. That computer delivers the message to the mail server computer of the *recipient's* ISP, where it remains until the recipient retrieves it onto his or her own computer. Id.

Every computer on the Internet has a unique numerical address (and Internet Protocol or IP address), which is associated with a more readily recognizable domain name (such as "mysite.com"). Heckel, 143 Wn.2d at 828, f.n. 4. "'Electronic mail address' means a destination, commonly expressed as a string of characters, to which electronic mail may be sent or delivered." RCW 19.190.010(3); Heckel, 143 Wn.2d at 827, f.n. 2

As the e-mail message travels from sender to recipient, each computer transmitting the message attaches identifying data to the "Received" field in the header. The information serves as a kind of electronic postmark for the handling of the message. Heckel, 128 Wn.2d at 828, f.n. 4. It is possible for a sender to alter (or "spoof") the header information by misidentifying either the computer from which the message originated or other computers along the transmission path. Id.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -4

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

The term "spam" refers broadly to bulk e-mail (or "junk e-mail"), which can be either commercial (such as an advertisement) or noncommercial (such as a joke or chain letter). Heckel, 143 Wn.2d at 826-827, f.n. 1. The term "spam" and its derivatives, "spammer" and "spamming" are now widely accepted and used terms. Id.

Plaintiff alleged that Go Entertainment Inc. violated RCW 19.190.020 (1)(a), and thus the CPA, misrepresenting information defining the transmission paths of his UCE messages. Go Entertainment used a wide variety of "from" addresses to hide the true sender of their spams. Go Entertainment routed its spam through at least a dozen different domain names without receiving permission to do so from the registered owners of those names. For example, in approximately ten percent of the messages Plaintiff received from Defendants, the third party Internet domain names forum.dk, abo.fi, tari.tari.it, newmail.ru, hotpop.com, ru.ru, mailandnews.com, fun.21cn.com, tin.it, ok.ru, canal21.com, profm.fi, topmail.com.ar, 24horas.com, mecom.net, postaweb.com, iobox.fi, katamail.com, redseven.de, ministre.net, were used without the permission of the third parties. The Defendants do not own these third party Internet domain names and used them without their owner's permission

The other approximately ninety percent of these spams used the Internet domain name "yahoo.com" in the "from" address. In fact, "yahoo.com" is a domain name assigned to Yahoo! Inc., not the Defendants, and was used without the owner's permission. Yahoo.com specifically forbids the use of their domain name for any spamming purposes. *See Exhibit A, Yahoo Terms of Use.* Defendants' messages did not originate from the "yahoo.com" domain; no yahoo.com IP numbers were in the defendants' spam headers. Accordingly, Defendants misrepresented the transmission path of their email messages by obscuring their true point of origin, used the third party

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -5

Internet domain name yahoo.com without the owner's permission, thus clearly violated RCW 19.190.020(1)(a).

Defendants also used non-existent, invalid, and non-working "from" addresses in their spams. Reply messages sent by Hodgell to their "from" addresses, attempting to notify them they were spamming an email address held by a Washington state resident, were "bounced" back to Hodgell and designated "undeliverable" or "user unknown". *See Exhibit B, Sample Bounces.* These reply messages were undeliverable because the defendants used "from" email addresses that were invalid or non-existent at the time of transmission or by the time Hodgell attempted to respond. Washington State law requires that a sender of commercial electronic mail truthfully identify the originating electronic mail address of the transmission, the "point of origin" RCW 19.190.020(1)(a). By posting a seemingly valid "from" email address that is, in fact, impossible to respond to, defendants misrepresented the status and/or existence of their "from" email address, the "point of origin," and thus violated RCW 19.190.020(1)(a).

In at least ninety percent of the defendants' spams sent to the Plaintiff, the "to" email address field was completely deleted, and thus totally obscured. In this way also, Defendants intentionally obscured information in identifying the transmission path of their commercial electronic mail message, further violating RCW 19.190.020(1)(a).

Accordingly, Defendants misrepresented and obscured the true point of origin and transmission path of their spams by using the methods written above, and thus, clearly violated RCW 19.190.020(1)(a).

Defendants also used third party Internet domain name HOTMAIL.COM without its permission, in the "to" field, which is part of the transmission path, and thus violated

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -6

RCW 19.190.020(1)(a).  Neither Plaintiff nor Defendants own this Internet domain name, but Microsoft Inc. (a Washington state corporation) owns HOTMAIL.COM.

Hodgell's second cause of action alleged violations of RCW 19.86, the Washington Consumer Protection Act.  Each and every violation of RCW 19.190 is a *per se* violation of RCW 19.86.

Hodgell also alleged in his complaint trespass to chattels.  By forcing him to deal with the irritation of high volumes of email appearing in his inbox, Hodgell experienced loss of use of his computer time and resources, loss of value, and additional work and expenses relating to his computer equipment and Internet service which he paid and pays for.  *See Declaration of Joel Hodgell.*

Beginning in December of 2001, Hodgell began receiving email from Defendants.  He replied to many of the "from:" email addresses used in Defendant's spams, informing them that he was a Washington State resident, and putting them on notice that their emails were arguably in violation of RCW 19.190 and RCW 19.86.  Later emails not only put Defendants on notice that Hodgell was a Washington resident, but demanded that they cease and desist sending him email.  Many email notices to the "from:" email addresses used in Defendants' spams bounced, indicating that the points of origin of the spams sent by the defendants were fraudulent.  *See Exhibit B.*

**B.**     **No genuine issue of material fact exists and the plaintiff Hodgell should be granted summary judgment.**

Summary judgment is appropriate where no issues of material fact exist, and only questions of law remain to be determined. State Farm Insurance v. Emerson, 102 Wash.2d 477, 687 P.2d 1139 (1984). Before granting a motion for summary judgment, the Court must consider all facts submitted and make all reasonable inferences from the facts in a light most favorable to the non-moving party. *See,* Hanz v. State, 105 Wash.2d 302, 311, 714 P.2d 1176 (1986). However, the non-moving party must satisfy the Court

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -7

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

that there is an issue to be tried. <u>Young v. Key Pharmaceuticals</u>, 112 Wash.2d 216, 770 P.2d 182 (1989). Moreover, should the party adverse to the summary judgment motion fail to respond, summary judgment "shall be entered against the adverse party." FRCP 56(e).

### 1.      **Defendants' Actions are clearly violative of RCW 19.190.**

As an overview, Hodgell is entitled to summary judgment as a matter of law. The laws violated by Defendants are set forth in statutes that spell out what is required and what is forbidden in clear and straightforward terms. *See* Ch. 19.190 RCW.

Hodgell is entitled to summary judgment in that there are no genuine issues of material fact.

Examples of the emails sent by the defendants are attached as *Exhibit C*. The complete compilation of the emails is attached in CD-Rom form as *Exhibit D*. The emails are shown in "screenshot" form in Mr. Hodgell's inbox as *Exhibit E*, and the authenticity of the emails in Mr. Hodgell's inbox is certified by Microsoft, Inc. in *Exhibit F*. They clearly show violations, as argued below, of RCW 19,190 and RCW 19.86. The domains used in the emails are not owned by the defendants.  Thus, there clearly are no genuine issues of material facts as to the e-mails which are the subject of this suit and what the e-mails say in terms of the headers, their content, their points of origin, and the information as to their transmission paths and subject lines.

### 2.      **Defendants sent CEM messages to Hodgell, and knew or should have known that he was a Washington State resident.**

Defendants sent e-mail offerings to Hodgell, a resident of Washington State. Around the beginning of December, 2001, Hodgell, a resident of Seattle, Washington, received an e-mail solicitation from the e-mail address of hall5849@yahoo.com. *Exhibit*

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -8

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

*C, and Declaration of Joel Hodgell, at p. 1 ¶ 2.* The message was a solicitation to access to Go Entertainment's pornographic websites. Id.

In response to Go Entertainment's e-mail solicitations Hodgell sent email to many of the "from" address in the email he received informing them that he was a resident of Washington State. *See Exhibit B.*

Each time, he received a response from Go Entertainment's server stating that his attempts to send a message "failed." *Id.* The reason for the failure was typically listed as "[t]his account has been disabled or discontinued." *Id.*

For months thereafter, Hodgell continued to receive hundreds of spams from Go Entertainment Inc. attempting to sell him access to pornography. To date, Hodgell has received at least 358 emails from defendants, which are found as *Exhibit D.* As of September 11, 2003, Microsoft Inc. certified that Mr. Hodgell's inbox contained approximately 304 emails, but has since received a total of 358 (and still rising). *See Exhibits E and F, the Declaration of Jesse David Falk.*

To many of these messages, Hodgell again attempted to give notice that he was a Washington State resident, and many also demanded that the defendants cease and desist sending him further commercial email. All of these subsequent messages also "bounced."

Hodgell's residency information, in addition to the direct notices that he sent to the Defendants, was available through other sources. RCW 19.90 states that in order to violate its provisions, the sender must know, *or have reason to know*, that the address is held by a Washington state resident.

It was possible for the Defendants to know Mr. Hodgell's email addresses were held by a Washington state resident by other means. Defendants had several opportunities to discover it. First, Hodgell's email addresses were listed with the WAISP

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -9

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA 98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

registry (http://registry.waisp.org). This database was jointly developed and maintained by the Washington Association of Internet Service Providers and the Washington State Attorney General's Office. Once registered, any sender of email in the world has the ability to discover whether any email address in their possession is held by a Washington Resident merely by typing the address into a website. The WAISP registry was held by the Washington Supreme Court to be valid notification that the holder of the email address registered there is a Washington resident. <u>State v. Heckel</u>, 143 Wn.2d 824, 837 (2001).

The second way that defendants could have determined Mr. Hodgell's residency is that it was available on the public directory of hotmail.com. Hotmail does post personal information on their website if the owner of the email address requests or permits it. Mr. Hodgell did in fact post his residency information with his internet service provider. *Declaration of Joel Hodgell p. 2, ¶5.*

It is clear that Defendants could easily have known Mr. Hodgell's email addresses were held by a Washington state resident. Should the defendants argue that taking the time to check is too burdensome, then perhaps the defendants should either send emails that do not violate the statute in the first place and then not have to check at all, or advertise in some other, more conventional legal way. The only reason the "burdensome" check would need to be performed at all is if they intended to send email in violation of the statute.

### 3. Defendants violated the CEMA by sending commercial email with misleading subject lines.

Washington law requires a sender of commercial e-mail to not use a false or misleading subject line. RCW 19.190.030(1) states, in pertinent part:

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -10

It is a violation of the consumer protection act, chapter 19.86 RCW, to initiate the transmission of a commercial electronic mail message that…contains false or misleading information in the subject line.

RCW 19.190.030(1)

Washington case law makes it clear that in a commercial sales environment, like the present context, one can mislead by communicative act of commission or omission. See e.g., Testo v. Russ Dunmire Oldsmobile, 16 Wn.App. 39, 554 P.2d 349 (1976); State v. Burlison, 38 Wn.App. 487, 685 P.2d 1115 (1984).   An act or practice is "deceptive" under the Consumer Protection Act if the act or practice has a "tendency or capacity to deceive a substantial portion of the general public." Short v. Demopolis, 103 Wn.2d 52,70, 691 P.2d 163, 172 (1984).  The purpose of the capacity to deceive test is to deter deceptive conduct before injury occurs. Hangman Ridge,105 Wn.2d 778, 785, 719 P.2d 531, 535 (1986); Dwyer v. J. I Kislak Mortg. Corp., 103 Wn.App. 542, 13 P.3d 240 (2000).  It is not necessary to prove actual deception or even an intent to deceive. Id.; See also, Sing v. John L. Scott, 134 Wn.2d 24, 948 P.2d 816 (1997); Dwyer, 103 Wn.App. at 547, 13 P.3d at 240.  Thus, many subject lines used by Go Entertainment violate RCW 19.190.030(1) by concealing and/or misrepresenting material information.

By enacting RCW 19.190.030(1)(b), the legislature's intent was to assure a system which required originators of commercial electronic mail to provide the recipients of such e-mail with subject lines which are not misleading or deceptive to allow consumers the ability to decide whether or not to use their valuable time and resources to download a message from their mail server to their individual computer.  SB 6434_011998. In particular the legislature found that:

Commercial electronic mail messages often impose an out-of-pocket monetary cost on recipients who cannot refuse such messages and incur incremental fees for time spent accessing and reviewing each message. To the recipient, commercial electronic mail messages are often indistinguishable from other electronic mail messages. The messages thus diminish the utility of electronic mail service because users must wade

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -11

through unwanted advertisements to obtain those messages they wish to receive.

SB 6434_011998.

Without a non-misleading or deceptive subject line, an e-mail recipient cannot distinguish between unwanted commercial advertisements or messages and desired or wanted commercial messages or important personal messages. The purpose of the subject line in an e-mail message is to describe the message's text. This enables a computer user to have discretion over whether and when to read the text of the message. For example, emergency or personal messages may take precedence over commercial messages. Likewise, work-related messages may take precedence over commercial messages. In order to prevent unfair or deceptive competition, the CEMA requires that all senders of commercial e-mail use non-misleading and non-deceptive subject lines. Otherwise, those who comply with the law might not get their messages opened, while those who violate the law get consumers to open the messages because of the misleading and deceptive subject lines.

Go Entertainment's commercial e-mail messages display various subject lines which mislead recipients as to the true nature of the message. Defendants have used the following subject lines: "Wait until you see this;" "Tim wanted your approval on this;" "This is good! (15@2);" "Get some of this;" "YOU ARE INVITED TO MY PARTY!;" "HOW DID I DO THIS?" None of these subject lines used by Go Entertainment accurately describes the content of the messages, the real purpose of the e-mail, or the goods being sold by it. A large number of Go Entertainment emails also claim that the access to their pornographic sites is "free," but potential visitors to these sites are asked to provide credit card numbers and would be charged for such access.

Many of Go Entertainment's subject lines mislead the recipient about the message's text. They contain a commercial solicitation for pornography. Yet the subject lines are designed to "grab" the recipient without disclosing the true nature of the

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -12

solicitation. They conceal the true nature of the e-mail, and mislead the recipient into downloading and reading the text of the message.

When recipients of commercial e-mail messages are provided accurate and sufficient information in the subject line of such messages, they are afforded the ability to determine the nature of the messages and make decisions as to whether or not to download such messages. This is especially true for Go Entertainment Inc., many of whose emails contained actual pornographic images. Children and others who could be offended by viewing these images could easily be duped into opening emails containing these images by the false or misleading subject lines. By using the above-mentioned subject lines in the CEM the defendants transmitted, they violated the law. RCW 19.190.020, .030.

This reasoning also applies to the defendants' "unsubscribe" mechanism, located from within the text of the email itself. The use of this method is not only of questionable utility because such requests are often ignored ( *Exhibit G, Declaration of Scott Pancoast, Declaration of Joel Hodgell, at p. 2, ¶ 6),* but this method forces the recipient of the email to download the message, open it, and pore over it to find the "unsubscribe" process. Having to do this defeats the intention of the legislature, that recipients of mail be allowed to delete the message without downloading it and being forced to read through it.

The use of false or misleading information in the subject line of a commercial e-mail message violates RCW 19.190.030(1)(b). Additionally, the conduct described above constitutes unfair or deceptive acts or practices in trade or commerce and unfair methods of competition in violation of RCW 19.86.020. Pursuant to RCW 19.190.030(2), Go Entertainment's violation of RCW 19.190.030(1)(b) constitutes a *per se* violation of the Consumer Protection Act, Chapter 19.86 RCW. RCW 19.190.030.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -13

### 4.    Go Entertainment  violated the CEMA by using many third parties's domain names without permission.

Defendants routed their mail through the "yahoo.com" domain name, as well as

the domain names forum.dk, abo.fi, tari.tari.it, newmail.ru, hotpop.com, ru.ru,

mailandnews.com, fun.21cn.com, tin.it, ok.ru, canal21.com, profm.fi, topmail.com.ar,

24horas.com, mecom.net, postaweb.com, iobox.fi, katamail.com, redseven.de,

ministre.net, all without the permission of those third parties.  For example, below is a

reproduction of the header from one of the e-mail messages Hodgell received from Go

Entertainment, the graphical version of which is enclosed in *Exhibit C*:

```
From hall5849@yahoo.com Sun, 02 Dec 2001 03:03:42 -0800
Received: from [12.64.216.187] by hotmail.com (3.2) with ESMTP id
MHotMailBDD3488B006D400438A60C40D8BB059994; Sun, 02 Dec 2001 03:02:45 -0800
From: <hall5849@yahoo.com>
Subject: See The HOTTEST Adult Site on The Web!
Date: Sun, 2 Dec 2001 05:48:02
Message-Id: <184.836107.417333@oulu.fi>
Mime-Version: 1.0
Content-Type: text/html; charset="us-ascii"


<html>

<head>
<meta http-equiv="Content-Type" content="text/html; charset=windows-1252">
<meta name="GENERATOR" content="Microsoft FrontPage 4.0">
<meta name="ProgId" content="FrontPage.Editor.Document">
<title>Sexy Present</title>
</head>

<body LINK="#0000ff">

<B><FONT SIZE=5 COLOR="#ff0000">
<P><CENTER><font face="Comic Sans MS">** Your SEXY Present Awaits YOU!!
**</font></CENTER></P>
</FONT>
</B><font size="4" face="Comic Sans MS" color="#FF0000">Hi There!<BR>
<BR>My Name is Sandy and My Robe is Open and I'm Wearing
<BR>NOTHING But a Smile!!</font>
<p><font face="Comic Sans MS"><FONT COLOR="#0000ff">
 <BR>
</FONT>
<A HREF="http://216.129.174.142"><font size="5">Click Here and See for
Yourself!</font></A>
</font></p>
<P><font face="Comic Sans MS" color="#008000">Delete This Message If You are
UNDER 18 or Nudity Offends You!!</font></P>
```

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -14

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

```
</body>
</HTML>
```

*See Exhibit C,* and *Declaration of Joel Hodgell.*

The fourth line down, which is highlighted, states: "From: hall5849@yahoo.com," indicating the purported e-mail address of the sender.  The second line down, "Received: from [12.64.216.187]" indicates that "yahoo.com" was not the ISP server Go Entertainment actually used to send the e-mail message.  Yahoo.com, Inc. owns the "yahoo.com" domain name, and none of Yahoo.com Inc.'s equate with the listed IP address of 12.64.216.187.  Yahoo.com has never had any business relationship with Go Entertainment, nor has it ever given Go Entertainment the permission to use the "yahoo.com" domain name or permission to route its e-mail through Yahoo.com Inc.'s registered IP numbers.  Yahoo specifically prohibits such practice.  *See Exhibit A.*

Washington law requires a sender of UCE to not misrepresent the originating e-mail address of the transmission.  RCW 19.190.030(1)(a).  In addition, Washington law explicitly prohibits senders of UCE from using a third party Internet domain name without permission. RCW 19.190.030(1)(a).

RCW 19.190.030(1)(a) states, in pertinent part:

> It is a violation of the consumer protection act, chapter 19.86 RCW, to initiate the transmission of a commercial electronic mail message that...uses a third party's internet domain name without permission of the third party, or otherwise misrepresents any information in identifying the point of origin...of a commercial electronic mail message.

RCW 19.190.030(1)(a)

Defendants violated the law by using a third party's Internet domain name without permission.  Defendants used the "yahoo.com" domain name as the point of origin of their UCE, without Yahoo.com Inc., the domain name registrant's, permission.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -15

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA 98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

This is a violation of RCW 19.190.030(1)(a).  Additionally, this conduct constitutes a *per se* unfair and deceptive act or practice in trade or commerce, and an unfair method of competition in violation of RCW 19.86.020.  RCW 19.190.030.

Defendants also violated the law by using a third party's Internet domain name without permission by using the "hotmail.com" internet domain name as the end point of their CEM, without Microsoft Inc.'s (the internet domain name owner) permission. *Exhibit H, Hotmail terms of use*.  This is also a violation of RCW 19.190.030(1)(a). Additionally, this conduct constitutes a *per se* unfair and deceptive act or practice in trade or commerce, and an unfair method of competition in violation of RCW 19.86.020.  RCW 19.190.030.

### 5.   Defendants violated the CEM Act by misrepresenting the origin and transmission path of the messages they sent.

Washington law requires a sender of CEM to truthfully identify the origin and transmission path of the e-mail.  RCW 19.190.030(1) states, in pertinent part:

> It is a violation of the consumer protection act, chapter 19.86 RCW, to initiate the transmission of a commercial electronic mail message that…uses a third party's internet domain name without permission of the third party, or otherwise *misrepresents or obscures any information in identifying the point of origin or the transmission path* …of a commercial electronic mail message.

RCW 19.190.030(1), *emphasis added*.

E-mail messages sent via the Internet contain a header, which tells the recipient the source of the original message, as well as any points of transmission on the message's path to the eventual recipient. Heckel, 143 Wn.2d at 828, f.n. 4.  A typical header will show the path of computers that sent the e-mail message to the ultimate recipient. Id. The specific computers are identified by a series of computer and domain names, and Internet protocol address numbers. Id. Often there are several computers involved in transmitting the message to its final destination. Id. By examining the names and numbers, which identify each computer along the transmission path, it is possible to

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -16

determine who originally sent the message, and which Internet service providers transmitted it to its ultimate recipient. Id.

It is possible for a sender to alter (or "spoof") the header information by misidentifying either the computer from which the message originated or other computers along the transmission path. Id.

Defendants manipulated the information in their messages' headers to suggest that their solicitations originated from persons with no apparent connection with them. As noted, some of the many "from" names (that appear in the recipient's email inbox) the defendants used were: "Nicki9906717;" "dorothy;" fredfiller;" Pamela;" "bobmiller;" "Jennifer;" "maria;" "sender833188;" billsgrill39;" "helenhntt;" etc. as the senders, and/or the points of origin of some of their CEM, when in fact, their CEM originated from the defendants' themselves, and not from these individuals or disembodied statements. *Exhibit D.* Not a single email received from Defendants accurately states that the CEM came from Go Entertainment, Inc. Only through extensive forensic tracking do the CEM show that the source of the email was Go Entertainment, Inc.

By using these false "from" names, Defendants misrepresented that their messages originated from these individuals instead of these corporations. Accordingly, Defendants misrepresented the points of origin and transmission path of their e-mail messages by obscuring their true point of origin, sender and "from:" information fields.

Further, when Hodgell attempted to send email to these "from" addresses in an attempt to notify them that he was a Washington State resident and to cease and desist their email, many of his email transmissions "bounced." This proves that the "from" addresses the defendants used were non-working, non-existent addresses, further proving that the point of origin of the messages was misrepresented.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -17

It is a violation of RCW 19.190.030(1)(a) to misrepresent/obscure the point of origin and/or transmission path of a commercial e-mail message. Additionally, the above-described conduct constitutes a *per se* unfair and deceptive act or practice in trade or commerce, and an unfair method of competition in violation of RCW 19.86.020. RCW 19.190.030.

### 6.    Defendants violated RCW 9.68, the Obscenity and Pornography Act.

**"Sexually explicit material" -- Defined -- Unlawful display.**
(1) A person is guilty of unlawful display of sexually explicit material if he knowingly exhibits such material on a viewing screen so that the sexually explicit material is easily visible from a public thoroughfare, park or playground *or from one or more family dwelling units.*

(2) "Sexually explicit material" as that term is used in this section means any pictorial material displaying direct physical stimulation of unclothed genitals, masturbation, sodomy (i.e. bestiality or oral or anal intercourse), flagellation or torture in the context of a sexual relationship, or emphasizing the depiction of adult human genitals: PROVIDED HOWEVER, That works of art or of anthropological significance shall not be deemed to be within the foregoing definition.

(3) Any person who violates subsection (1) of this section shall be guilty of a misdemeanor.

RCW 9.68.130, *Emphasis added.*

Here, Defendants knowingly caused obscene email to be sent into the homes of Washingtonians, indiscriminately, many of which housed minors. *See Exhibit C.* Defendants made no attempt to determine whether any of the email addresses they sent graphically pornographic email to were owned by minors. None of these emails can be deemed to be works of art, or of anthropological significance. Accordingly, they violated RCW 9.68, and should be enjoined from sending further email into the State of Washington.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -18

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

### 7.    Defendants committed the tort of trespass to chattels.

Plaintiff was damaged by the use the illegal email made of space on his hard drive, the connectivity time with his ISP, and the time spent in dealing with the illegal email. *See Declaration of Joel Hodgell, at page 2 ¶ 7.* This damage also constituted nuisance, as the time spent in dealing with this large volume of emails constituted an unreasonable interference with the use and enjoyment of his property-his computer. To date, Plaintiff has spent approximately 147 hours dealing with Defendants' spam: reading, sorting, and responding in an attempt to stop it. The spam has taken up approximately 96 mb on Mr. Hodgell's hard drive. Id.   Plaintiff estimates that his connectivity charges due to the increased volume of UCM have increased over the past year. Id. Defendants are therefore liable for trespassing on Plaintiff's computer.

### 8.    Defendants violated the Consumer Protection Act.

In addition to violating the Washington Consumer Protection Act, RCW 19.86, per se through violating RCW 19.190, Defendants violated the CPA independently in two other ways.

First, Defendants claim that Plaintiff "opted in" to receive email. This is not true, Plaintiff never invited the Defendants to send email to him. This is a deceptive statement; made in the course of trade (advertising goods and services); with a public impact (Defendants send *millions* of emails, many presumably to Washington residents); that injured Plaintiff in his business and property (Plaintiff was forced to deal with a large volume of unwanted, illegal spam that cost him time away from his work, bandwidth, and hard drive space: *See Declaration of Joel Hodgell*); and was undeniably caused by the Defendants' emails.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -19

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

The Supreme Court of New York recently faced a near identical situation in *State of New York v. Monsterhut Inc.,* no. 402140/02.  In that case, MonsterHut Inc., an email marketing company, claimed in their messages to New York residents that they were receiving email because they had "opted-in" to receiving them.  MonsterHut based their assertion on the representations of third parties that the lists of addresses were "opt-in."  Because MonsterHut was unable to provide any evidence that the recipients of their email had actually opted in to their marketing, the State of New York held that their email constituted fraud, false advertising, and deceptive practices under New York's consumer protection laws.  *Id.*  Washington's law was likewise violated.

The second way in which Go Entertainment violated the Consumer Protection Act is their making the following statement in many emails:

> Anti-SPAM Policy Disclaimer: Under Bill s.1618 Title III passed by the 105th U. S. Congress, mail cannot be considered spam as long as we include contact information and a remove link for removal from this mailing list. If this e-mail is unsolicited, please accept our apologies. Per the proposed H.R. 3113 Unsolicited Commercial Electronic Mail Act of 2000, further transmissions to you by the sender may be stopped at NO COST to you
>
> *See Exhibit C, spam from "Garther."*

This blatantly false statement is an attempt by Go Entertainment to legitimize the email it sends in the eyes of its recipients.  U.S. Senate Bill 1618, an Anti-slamming Amendments Act, did contain a Section 301, relating to transmissions of unsolicited commercial electronic mail.  S.1618 was approved by the U.S. Senate on May 12, 1998.  It was then referred to the House Committee on Commerce on October 21, 1998.  The Bill then died in committee and was never passed into law by the 105th Congress, or any other legislative body.  Not only was the law never passed, but Go Entertainment's emails did not even comply with the true requirements of the proposed law.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -20

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

Washington case law makes it clear that in a commercial sales environment, like the present context, one can mislead by communicative act of commission or omission. *See e.g., Testo v. Russ Dunmire Oldsmobile*, 16 Wn.App. 39, 554 P.2d 349 (1976); *State v. Burlison*, 38 Wn.App. 487, 685 P.2d 1115 (1984).   An act or practice is "deceptive" under the Consumer Protection Act if the act or practice has a "tendency or capacity to deceive a substantial portion of the general public." *Short v. Demopolis,* 103 Wn.2d 52,70, 691 P.2d 163, 172 (1984).  The purpose of the capacity to deceive test is to deter deceptive conduct before injury occurs. *Hangman Ridge,*105 Wn.2d 778, 785, 719 P.2d 531, 535 (1986); *Dwyer*, 103 Wash.App. 542, 13 P.3d 240 (2000). It is not necessary to prove actual deception or even an intent to deceive. Id.; See also, *Sing v. John L. Scott*, 134 Wn.2d 24, 948 P.2d 816 (1997); *Dwyer*, 103 Wash.App. at 547, 13 P.3d at 240.  Here, however, there is a clear attempt on the part of Go Entertainment to defraud the public into thinking that its email was legal.

### C.   Vicarious Liability

Throughout the pendency of this action, Go Entertainment claimed, in spite of abundant evidence otherwise, that it relied on third party agents to send email on its behalf.  Plaintiff, through the course of discovery, requested that Go Entertainment Inc. provide the identities of these alleged agents.  In May 2003, Plaintiff moved this Court for an Order compelling Go Entertainment, Inc. to "respond to Plaintiff's existing discovery requests fully, completely, and honestly."[1] That motion was granted, in an Order of June 20, 2003.  In spite of this Order, Defendant Go Entertainment Inc. to date has failed to provide the identities of these alleged agents or to pay the award of $250.00 of sanctions against it.

---

[1] This Motion also sought to compel the attendance of Richard Goldring at a deposition.  That portion of the Order of June 20 was subsequently quashed.

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -21

It is a long standing verity that principals are vicariously liable for the acts of their agents.   Go Entertainment Inc. claimed, in spite of abundant evidence otherwise, that it hired "third party marketing companies" to advertise for it via email. Even if that is true, it is vicariously liable for their actions. A master may generally be held liable for the tortious acts of the servant if such acts are performed within the scope of employment, although the master may not know or approve of them. Titus v. Tacoma Smeltermen's Union Local No. 25, 62 Wn.2d 461, 383 P.2d 504 (1963).  Go Entertainment exerted control over the email process when it insisted that they abide by state and federal laws. Here, it claims that it hired the unidentified marketers for the express purpose of sending emails to market its products, and it is undisputed that the offending actions here arose from that very authorization. As stated in WPI 50.03, "[a]ny act or omission of an agent within the scope of [apparent] authority is the act or omission of the principal."

The U.S. District Court for the Northern District of Iowa addressed this issue directly in America Online Inc. v National Health Care Discount Inc., cause no. C98-4111-PAZ. See Exhibit I.  There, the defendant was in the business of selling health and dental plans.  They hired a third party email marketer to email on their behalf, and claimed that they had no control over the email campaign.  In their Memorandum Opinion, that Court specifically held that the business owner was liable for the acts of their contracted third party email marketers.  Here, like there, Go Entertainment is responsible for the email sent on its behalf, and here, like there, it is free to counter claim against the agents for the damages that they are responsible for.

Even if Go Entertainment is not directly vicariously liable, and that it was completely duped by its agent who promised to abide by all federal and state laws, it is still liable for the damages.  The Washington Supreme Court established long ago that it

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -22

LAW OFFICES OF DIETRICH BIEMILLER
8420 Dayton Avenue North
Seattle, WA  98103
Tel. No. (206) 547-1000
Fax No. (206) 297-5990

is a "well-established principle of equity and justice that when one of two innocent persons must suffer by the fault of a third, the loss shall fall upon him who has enabled such third person to do the wrong." Caughren v. Kahan, 86 Wash. 356, 150 P. 445 (1915), citing Hall v. Hinks, 21 Md. 406. (see also Parker v. Hill, 68 Wash. 134, 122 P. 618 (1912), citing Merchants Bank v. State Bank, 10 Wall. 604; Coolidge v. Schering "whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it"). Here, should Go Entertainment claim that it was innocent of the harm caused by its "marketing companies;" as the party enabling the harm to occur, it must bear the burden of the damages.

Plaintiff will seek to compel Go Entertainment to identify the third parties through post judgment motions. In addition to potential actual third party entities, those third parties may prove to include Scores Holding Company, Crayola Investments, and other "shell companies" that were illegally or improperly formed to dissipate the impact of this judgment. Plaintiff may bring a civil RICO claim should it become apparent that the formation of these companies was part of an artifice to defraud Plaintiff and this Court by leaving Go Entertainment, Inc. as a moneyless, "judgment proof" entity while continuing its email and internet campaign through other entities.

## VI.   CONCLUSION

Plaintiff respectfully requests that the Court decree that Defendants have violated the Unsolicited Commercial Electronic Mail Act and the Consumer Protection Act by sending unsolicited commercial e-mail messages with misleading subject lines and headers, misrepresenting the subject of the UCE messages, and misrepresenting the transmission path of the UCE messages. Plaintiff respectfully requests summary judgment in its favor that Defendants have violated the Commercial Electronic Mail

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -23

Act, Chapter 19.190 RCW, the Consumer Protection Act, Chapter 19.86 RCW, the Washington Obscenity and Pornography Act, Chapter 9.68 RCW, and the common law tort of trespass to chattels. Mr. Hodgell is entitled to the summary judgment requested since no genuine issue of material fact exists and the Plaintiff is entitled to relief as a matter of law. Plaintiff anticipates no response to this motion, and the Court should grant this motion for that fact alone.

Plaintiff seeks appropriate damages pursuant to RCW 19.190.040 in the statutory amount of $500 for each violation; civil penalties pursuant to RCW 19.86.140 in the statutory civil penalty amount of $2,000 per violation; treble damages pursuant to RCW 19.86.090; reasonable costs and attorney's fees; and appropriate injunctive relief, as described in Plaintiff's Proposed Order, attached hereto.

Respectfully Submitted this 3 day of October, 2003.

Dietrich Biemiller, WSBA #32171
Attorney for Plaintiff

PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT -24